MILTON A. MACKAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6833.   Promulgated April 13, 1928.

*Harry Friedman*, *Esq.*, and *B. H. Feldstein*, *Esq.*, for the petitioner.

*J. W. Fisher*, *Esq.*, for the respondent.

570

OPINION.

LANSDON: During the taxable years the petitioner sold 1,772 lots. Each lot was sold on representation to the purchasers that a cement sidewalk would be constructed in front thereof at the cost of the

vendor and the contract of sale in every instance included the provision as to such construction, which we have quoted above. Within the years involved cement sidewalks were laid on 305 lots, at an average cost of $38.34, or a total of $11,693.70. At this rate it would have cost $67,938.48 to lay sidewalks on all the lots so sold in such years. At the date of hearing there had been no additional cement sidewalk construction.

The petitioner contends that under the provision of his sales contract he is obligated to build cement sidewalks on all the lots sold and that the cost of such construction is a capital outlay and should be included in the basis for determining gain or loss resulting from sales of lots. He, therefore, contends that the amount of $67,938.48 should be added to his other capital investments in the lots sold in the taxable years and included in the amounts that he is entitled to recover by sale before any gain is realized. The respondent concedes that the cost of constructing the sidewalks is a capital outlay, allows such cost in the amount of $11,694.19, which was actually expended in the taxable years, and disallows the remainder on the theory that the contract is not an enforceable obligation of the petitioner and that his conduct indicates that he did not accept the liability or intend to build any more sidewalks after the end of the taxable years.

There is no evidence that any of the sales contracts had been surrendered on or before December 31, 1920, or that any other action to render them void or unenforceable had been taken. We are of the opinion that the sidewalk clause was an enforceable provision of the contract. It was executed in Pennsylvania, but, as it related entirely to the sale of land located in Ohio, performance must necessarily be in the latter State. "A contract made in one State * * * to be performed in another, is governed by the laws of the latter State, which determines its validity, obligation and effect." *Pittsburgh C. C. & St. L. Ry. Co.* v. *Sheppard*, 56 Oh. St. 68; 46 N. E. 61. *Montana Coal & Coke Co.* v. *Cincinnati C. & C. Co.*, 69 Oh. St. 351; 69 N. E. 613. "A party to a contract actually entered into, can not by his own action, release himself of liability thereunder, where no right to do so is reserved in the contract itself." *Cincinnati* v. *Edison Electric Co.*, 9 Ohio Dec. 438. The claim advanced by the respondent that the contract was unenforceable and assumed to be sustained by the admission of evidence which tended to show that in October, 1921, the petitioner was attempting to avoid performance by subterfuge or evasion is without force either at law or in equity. The language is clear and neither requires nor admits of construction.

The contention of the petitioner that the cost of the land subdivided and sold as this was includes not only the original price, but the cost of building the sidewalks, is sustained by the authorities,

including the respondent. Improvements add *pro tanto* to the value of the thing purchased. Montgomery, in his work entitled Auditing, Theory and Practice, vol. II, p. 278, says: "Only such part of expenses as really adds to the value of the property, such as the grading and paving of streets, the cost of water and sewer installation, etc., is a proper addition to the capital account." "In some cases land development companies incorporate in the agreements of sale to purchasers of lots, definite agreements to make improvements, such as street paving, gutters and sidewalks. * * * If such improvements have not been contracted for, an amount sufficient to cover the cost of these improvements should be charged to the cost of lots and credited to a reserve account. This is necessary in order to determine the profit earned on sales of this kind." *Id.*, p. 282.

The only reference to this matter we find in rulings of the Bureau of Internal Revenue are in Cumulative Bulletin No. 1, p. 76, and Cumulative Bulletin No. 3, p. 108. The former is Office Decision 226:

Where building lots contained in a given tract of land are sold before the contemplated development work is completed, the profit realized should be determined on the basis of the cost of the land, or its fair market value on March 1, 1913, if acquired prior to that date, plus actual and estimated future expenditures for the development of the property in accordance with the contract of sale.

The latter is Office Decision 567:

Profit realized on the sale of lots, the selling price of which includes the cost of certain development work already made or to be made in accordance with the contract of sale, should be based on the cost of the land to the vendor, or its fair market value as of March 1, 1913, if acquired prior to that date, plus the actual and estimated future expenditures for development.

It may be observed that both of these rulings relate to section 213 (a) of the Revenue Act of 1918, under which the taxes are defined. While these orders are stated by the Bureau of Internal Revenue to "have none of the force or effect of treasury decisions" they "constitute a service of information from which taxpayers and their counsel may obtain the best available indication of the trend and tendency of official opinion in the administration of the income and profits tax provisions of the Revenue Acts," and when repeated in substance, as here, are very persuasive as to the best thought of the respondent's office. The Board considers them to be a correct exposition of the law, and directly applicable to the instant case. We are of the opinion that the petitioner was liable to all purchasers of lots for the construction of cement sidewalks. The evidence is conclusive that the cost of the walks constructed in the taxable years was $38.34 per lot. The petitioner sold each lot subject to a burden of at least this amount, which we believe should be included in the basis for the determination of gain or loss from the sale thereof.

The evidence adduced by the petitioner against the assessment of the 5 per cent penalty for negligence in the rendition of his tax returns is not convincing. On this issue the respondent is approved. We are convinced that the respondent has not sustained the burden of proof necessary to establish his affirmative allegation of fraud The penalty for fraud is disallowed. The petitioner abandoned his claim for a deduction from gross income of an amount of $10,308.70 alleged to represent ordinary and necessary expenses and on this issue the respondent is sustained.

Reviewed by the Board.

*Judgment will be entered on 10 days' notice, under Rule 50.*

STERNHAGEN and ARUNDELL dissent.